BOOTH BROS. & H. I. GRANITE CO. et al. v. BAIRD et al.

(Supreme Court, Appellate Division, First Department. May 22, 1903.)

1. JOINT CONTRACTS.

A number of corporations, engaged in business separately, signed a contract to furnish contractors with paving blocks. There was nothing in the contract by which the contractors could maintain an action against any one of the corporations separately for a failure to deliver the blocks. *Held* a joint contract on the part of the corporations.

2. SAME—CORPORATIONS—ULTRA VIRES—ESTOPPEL.

Where a number of corporations jointly signed a contract to supply contractors with paving blocks, and performed the same, the contractors, by receiving the benefit thereof, were estopped from raising the question that such contract was ultra vires.

3. SAME—EVIDENCE.

Defendants signed a contract, joint in form, for the purchase of paving blocks from plaintiffs. It appeared that defendants had theretofore had no partnership relations; that thereafter they severally bid on and obtained contracts for paving in different places, and continued to be competitors in bidding on paving work in such places; that the blocks delivered under the contract were actually delivered to and used by defendants on their respective individual contracts, and were paid for by them severally, except as to the unpaid part of the purchase price sued for. Under the contract no one of defendants obligated himself to take any particular quantity of the blocks, or to become solely responsible for those used by him in the performance of his individual contracts. *Held* a joint contract on their part.

4. SAME—DISCHARGE OF ONE JOINT DEBTOR—LIABILITY OF REMAINING DEBTORS—EVIDENCE.

Code Civ. Proc. § 1942, provides that the discharge of one joint debtor does not impair the right of action against another, unless such an intent "appears affirmatively." Plaintiffs recovered judgment against defendants, and the respective presidents of the plaintiff corporations individually entered into an undertaking with two of the defendants, reciting that the latter had paid plaintiffs the amount for which in equity and

¶ 2. See Corporations, vol. 12, Cent. Dig. § 1557.

good conscience they should be held liable on the contract sued on, and agreed, in substance, to hold them harmless from any damages by reason of any judgment on the retrial of the action. The undertaking did not purport to have been executed by authority of the plaintiff corporations, nor was it shown that they authorized its execution. *Held* not to impair plaintiffs' right of action against the other defendants.

5. SAME—DOCKAGE—DEMURRAGE.

The contract provided that defendants were to furnish docks and facilities for unloading the blocks on proper notice of the arrival of the vessels on which they were shipped. *Held*, that the failure of defendants to provide dockage for the vessels of whose arrival they had notice did not justify plaintiffs in omitting to give notice of the arrival of subsequent cargoes and in charging demurrage thereon.

6. SAME—CONDITIONS PRECEDENT.

As plaintiffs agreed to deliver the blocks on the docks, they should have shown, as a condition precedent to the recovery of demurrage, not only that they gave notice of the arrival of the vessels, but also that the cargoes were ready for delivery.

7. SAME—DECEASED JOINT DEBTOR—LIABILITY OF ESTATE.

The estate of a deceased joint debtor is not liable where it is not shown that the surviving joint debtors are insolvent.

Van Brunt, P. J., dissenting in part.

Appeal from Judgment on Report of Referee.

Action by the Booth Bros. & Hurricane Isle Granite Company and others against Isabella Baird, as executrix, John G. Smith, Charles Hart, and another. Judgment for plaintiffs, and defendants Hart and Isabella Baird, as executrix, bring separate appeals. Reversed in part, and affirmed in part if modified as stated in opinion.

For former opinion, see 34 N. Y. Supp. 392.

The action is brought to recover the contract price of paving stone delivered under the following conditions, and for demurrage, storage, and wharfage on account of the failure of the purchasers to provide a place for the delivery and acceptance of the same, to wit:

"New York, March 19th, 1889.

"Messrs. Matthew Baird, John G. Smith, William Kelly, Charles Hart— Gentlemen: We will furnish you ten millions granite paving blocks, 9 inch and upwards in length, $3\frac{1}{2}$ to $4\frac{7}{8}$ inches wide, and from 7 to 8 inches deep, which shall be acceptable to the departments under which they are to be used, provided the specifications are the same as named by the said departments for the year 1888, during the season ending December 31, 1889. The blocks to be used in the cities of New York and Brooklyn, and to be delivered, on such docks in said cities as you may designate, in equal monthly installments, as near as may be, subject to delays in transportation and obtaining transportation, occasioned by the dangers of the sea and the acts of God, for the following sums:

"For all blocks used by you in the City of New York, one dollar sixty-seven and one half cents ($1.67$\frac{1}{2}$) per superficial yard.

"For all blocks used by you in the City of Brooklyn, one dollar sixty-five cents ($1.65) per superficial yard.

"For all blocks sold by you to be used on contracts other than your own, seventy-nine dollars ($79) per M., to average 21 blocks to the superficial yard, said blocks to be paid as follows:

"Twenty dollars per thousand on the Wednesday following the delivery of each thousand. Forty dollars per thousand on the 10th of each month for blocks delivered the preceding month, and the balance on all blocks laid by you, the time of the completion and acceptance of the contract in which said blocks are used, and the balance of all blocks sold by you as aforesaid, thirty days after delivery of same.

"You to provide good and suitable docks for each vessel forty-eight hours after notice of her readiness to deliver blocks under this arrangement, and

to receive said blocks at the rate of not less than one hundred tons per day, Sundays, holidays and rainy days excepted.

"In the event that both of the cities of New York and Brooklyn do not make contracts requiring the use of ten millions of blocks, then the number of blocks to be taken by you under this arrangement shall be equal only to the number required under the said contract made by the said cities.

"We will also carry for you at our quarries a number of blocks not exceeding three millions during the time covered by this arrangement upon your payment to us on account thereof, $40.00 per thousand upon so many as shall be thus carried.

"Your early reply to this is waited.

"Very respectfully yours,

"Booth Bros. & Hurricane Isle Granite Co.,
"John Booth, Treasurer.
"New York, Me. Granite P. Block Co.,
"By John Pierce, President.
"Rockport Granite Co.,
"By Chas. S. Rogers, Treasurer.

"Accepted:
"Matthew Baird.
"John G. Smith.
"William Kelly.
"Charles Hart.
"Witness:
"Charles S. Ferguson."

Indorsed on the back as follows:

"In cases where either of the cities of New York or Brooklyn desire to purchase blocks direct, we authorize you to bid for and sell the same as you see fit, without prejudice to this letter, and without accounting to us for the sale of them.
Matthew Baird.
"John G. Smith.
"Wm. Kelly.
"Charles Hart."

"Witness: Charles S. Ferguson."

The other material facts and points presented are stated in the opinion.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Augustus Van Wyck, for appellants.

George F. Harriman, for respondents.

LAUGHLIN, J. The first question presented is whether the contract was joint or several or joint and several on the part of either or both of the parties thereto. In form, manifestly, the contract is joint, and joint only, on the part of the vendors, and joint, and joint only, on the part of the purchasers. It appears, however, that the vendors were corporations engaged in business separately, and the purchasers were severally engaged in business as paving contractors; some in both the cities of New York and Brooklyn, and some in only one. It is contended that the plaintiffs could not lawfully become partners in supplying paving stone to the defendants, and that, consequently, they cannot jointly maintain an action upon the contract; but manifestly the undertaking was joint on the part of the plaintiffs, although in fact as between themselves each was to contribute, as near as practicable, an equal amount of the paving stone. There is nothing in the contract by which the purchaser could maintain an action against either of the plaintiffs separately for a failure to de-

liver the whole or any part of the paving blocks. There would be no basis for such a recovery. Consequently the contract is necessarily joint on the part of the plaintiffs. It may be that such a contract by the plaintiffs was ultra vires, as claimed by the appellants (People v. N. R. S. R. Co., 121 N. Y. 582, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843); but, the plaintiffs having performed the contract, and the defendants having received the benefit thereof, they are estopped from raising this question (Woodruff v. Erie Railway Co., 93 N. Y. 609; Whitney Arms Co. v. Barlow, 63 N. Y. 62, 20 Am. Rep. 504).

The appellants also contend that the liability of the purchasers was several, and not joint. In support of this contention it has been shown not only that the purchasers had theretofore had no partnership relations, but that thereafter they severally bid upon and obtained contracts for paving in New York and Brooklyn, and that the paving stone delivered under this contract was actually delivered to and used by the purchasers upon their respective individual contracts, and paid for by them severally, except as to that part of the purchase price which has not been paid. These facts do not necessarily show a controlling practical construction of the contract by the parties. They are consistent with a joint liability on the part of the purchasers, and such, we think, is the effect of the contract. It is evident that the purpose and object of the plaintiffs was to maintain a price for paving stone that would net them a reasonable profit. They had theretofore been competitors, but by this contract virtually ceased to be competitors as to all paving work in New York and Brooklyn during the period covered by it. It does not expressly appear, but the inference is plain, that they practically had a monopoly and control of the particular kind of paving blocks to which the contract relates. While it was not expressly covenanted that the contractors would not sell similar paving blocks to other contractors in the cities of New York and Brooklyn, that apparently was the object and intention of the parties; and thus the purchasers, in effect, obtained control of the paving to be done in New York and Brooklyn during the time specified with that kind of paving blocks, for it is provided that, in addition to using the paving blocks in performance of their own contracts, they are at liberty to sell to the cities should the municipal authorities undertake the work of paving without letting contracts therefor. We have not overlooked their testimony that they continued to be competitors in bidding upon paving work in these cities, but that is not controlling. The object of each of them in entering into this contract is plain. It was that each should know that he was to receive the paving blocks required in the performance of his contracts on as favorable terms as the other, and in order to accomplish this result they saw fit to enter into a joint contract. There is evidence indicating a good understanding at least between the purchasers, for it appears that from time to time one would take a contract from the other at the price at which it was let and perform the work and receive the profits. When contractors came to an understanding as to a division of work without competition, they can arrange to let one of their number be

the lowest bidder upon a particular contract without exhibiting bids to one another; but whether, as would be evident were it not for the express testimony to which reference has been made, they had an understanding as to the division of the work, or as to the contracts that each was to be the lowest bidder or not, is immaterial. They were all business men of considerable experience. It is not necessary that we should ascertain every reason that actuated them in making this joint contract. It is sufficient that in contracts as made neither obligated himself to take any particular quantity of the paving blocks, or to become solely responsible for those used by him in the performance of his individual contracts. If such had been the intention of the parties, they would have known that it was not expressed by this contract. We conclude, therefore, that both in form and effect the undertaking was joint, and only joint, on the part of the purchasers, although as between themselves it was undoubtedly the duty of each to pay for the amount received by him. The action is, therefore, well brought by the plaintiffs, and the purchasers were jointly liable to them for all paving stone delivered under the contract.

Assuming the liability to be joint, the appellants contend that they have been discharged, owing to dealings between the plaintiffs and Smith and Kelly, the other joint purchasers under the contract. Upon a former trial of the issues before a referee the plaintiffs recovered. These appellants then appealed, and the judgment was reversed as to them on account of an overcharge, the defendants having been charged for the amount of paving stone that would have been used under a particular contract in paving the space occupied by the tracks of a street railroad, which space was not in fact repaved. Booth Bros. & Hurricane Isle Granite Co. et al. v. Baird et al., 87 Hun, 452, 34 N. Y. Supp. 392. That judgment was a lien upon two parcels of real estate owned by the defendant Smith, who died during the pendency of this action. His executors sold and conveyed the premises, and the plaintiffs joined in a quitclaim deed to the purchasers reciting a consideration of $1. On the 14th day of July, 1892, while the action was pending, the president of the plaintiff Booth Bros. & Hurricane Isle Granite Company and the president of the plaintiff New York & Maine Granite Paving Block Company individually entered into an undertaking with defendants Smith and Kelly reciting that they had paid the plaintiffs upon the contract the amount for which they would be liable if the contracts had been saved, and the amount for which in equity and good conscience they should be held liable, whereby they agreed, in substance, to hold said Smith and Kelly harmless from any damages by reason of any judgment in this action. The undertaking does not purport to have been executed by authority of the plaintiff corporations, nor is it shown that they authorized its execution. The appellants contend that these facts constitute a compromise of the plaintiffs' claims against Smith and Kelly, or at least as against the former, without reserving their claim against the other joint debtors, and that, therefore, all are discharged. It is provided in section 1942 of the Code of Civil Procedure that the discharge of one joint debtor

does not impair the right of action against another, unless such an intent "appears affirmatively." Manifestly, under this provision the plaintiffs have not, by the facts stated, lost their cause of action.

The contract being joint, any counterclaim properly established against the plaintiffs inures to the benefit of all defendants. Booth v. Cleveland Rolling Mill Co., 74 N. Y. 15, 26; Clark v. Patton, 27 Ky. (4 J. J. Marsh.) 33, 20 Am. Dec. 203. It is contended that the referee erroneously disallowed a counterclaim interposed by the defendant Hart for $2,592 for the expenses of handling, hauling, and storing paving blocks delivered prematurely. The complete answer to this claim lies in the fact that the referee has found upon conflicting evidence that the paving stone was received and accepted without any agreement or understanding for compensation in this regard, and the evidence is sufficient to sustain the finding. Another counterclaim which it is claimed was erroneously disallowed was for breaking and fitting paving blocks which it is claimed did not conform in dimensions with the requirements and specifications of the city. Upon this point also the referee has found upon ample evidence that the paving stone was accepted, retained, and used without objection, and that the purchasers have thereby waived their right to object. Another counterclaim of $1,128 for expenses of storing, hauling, and moving, and extra work in laying paving stone rejected as not conforming to the specifications as required by the city, has been disallowed. There was evidence sufficient to justify a finding that the plaintiffs were not notified of such rejection and called upon to take back or otherwise dispose of the rejected paving stone, and that the purchasers themselves removed or acquiesced in the removal of it, and used the same upon other contract work.

The plaintiffs have recovered the sum of $8,739.75 and interest thereon from the 6th day of March, 1890, as demurrage on account of the alleged failure of the defendants to provide, within the time specified in the contract, dockage for vessels arriving with cargoes of stone and facilities for removing the cargoes as rapidly as called for by the contract. The contract is silent on the question of demurrage. The plaintiffs were obligated under their shipping bills to pay demurrage upon certain terms and conditions, and it appears that the plaintiffs did pay demurrage in an amount nearly equal to that for which they have been allowed. The cargoes were consigned to the plaintiffs, and the purchasers were not parties to the shipping contracts. The liability of the purchasers is to be determined solely by their contract quoted in the statement of facts. The plaintiffs, apparently for their own convenience, commenced shipping the stone into the harbor of New York before the purchasers obtained contracts, and without any formal notice or request from the purchasers therefor. The purchasers were notified of the arrival of one or two vessels loaded with stone, but there is no evidence that any demurrage was charged on account of these vessels. There is evidence that the plaintiffs notified the purchasers of the arrival of other vessels; but it does not appear that the purchasers were notified of the arrival of any of the vessels for which demurrage has been allowed. The plaintiffs were aware of the fact that the purchasers had not obtained

contracts, and were not ready to use the stone. The purchasers, it is true, did not formally refuse to accept the stone on this ground; and they were evidently anxious that the plaintiffs should hold the stone, so that they might not be delayed when they should finally obtain contracts. They, however, did not furnish dockage for the boats, of the arrival of which they had notice. The plaintiffs contend that this justified them in omitting to give notice of the arrival of the subsequent cargoes upon which demurrage has been charged. We are unable to concur in this view. The action is brought in affirmance of the contract which was never rescinded. The failure of the purchasers upon proper notice to furnish docks and facilities for unloading the cargoes in accordance with their contract, if the purchasers at the time had obtained contracts requiring the use of the stones, might have constituted a breach of the contract which would have justified the plaintiffs in rescinding it and suing for their damages; but this they did not do. Not having elected to rescind the contract, even if they had a right to do so, they cannot justify the charge of demurrage upon vessels subsequently arriving upon the theory that on account of the former breach they were relieved from notifying the purchasers of the arrival of the cargoes and of their readiness to deliver the same. Moreover, the demurrage for which a recovery has been had was liquidated damages. The plaintiffs, in order to recover such damages in any event, should be held to a strict performance of the conditions of their own contract, which was drafted by themselves, upon which right, if it exists at all, depends. They should show as a condition precedent not only that they notified the purchasers of the arrival of the cargoes of stone in the harbor of New York, but also that such cargoes were ready for delivery. This they did not do in any case. In the absence of such notice, or a waiver thereof, the purchasers cannot be held liable for demurrage. It is clear that, if the purchasers had not obtained contracts requiring the use of the stone, they would not have been required to take the same. We are also of opinion that they could not be required to accept the stone until they obtained contracts. They expected to obtain such contracts, and the fair effect of the evidence is that the plaintiffs, also expecting that the purchasers would obtain contracts requiring the use of the stone, had the stone shipped here in advance; and, if the purchasers stood upon their strict legal rights, the duty of providing a place for unloading and storing the stone at that time devolved upon the plaintiffs. For the reasons stated, we think that the recovery of the demurrage and expenses for storage cannot be sustained.

There is evidence tending to show that the purchasers agreed to become responsible for the item of wharfage for which a recovery has been allowed.

The executrix of the deceased defendant Baird contends the estate which she represents is not liable to the plaintiffs, inasmuch as it has not been shown that the surviving joint debtors are insolvent. This contention seems to be fully supported by the case of Potts v. Dounce, 173 N. Y. 335, 66 N. E. 4.

It follows, therefore, that the judgment should be reversed as to the appellant Hart, and a new trial granted, with costs to appellant to abide the event, unless the respondents shall within 10 days stipulate to reduce the judgment by deducting the items allowed for demurrage and storage expenses, together with interest thereon, and, in the event of their so stipulating, the judgment is modified and affirmed as to Hart, without costs; and the judgment is reversed as to the appellant Baird, as executrix, and a new trial granted, with costs to appellant to abide the event. All concur, except VAN BRUNT, P. J., who dissents as to reversal of Baird judgment.